UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAMON WHEELER,

                         Plaintiff,

      v.

DET. FRED SLANOVEC; SGT. JASON
JENNINGS; SGT. RONALD MAGSAMEN;
DET. AHMED ARTOLA; DET. CHARLES
NYLAND; P.O. MICHAEL RIBIERO; P.O.
PATRICK GASS; P.O. NATHANAEL
DEYOUNG; JANE DOE (SUPERVISOR);
RICHARD ROE (SUPERVISOR); CHIEF
RAMON BETHENCOURT; THE CITY OF
MIDDLETOWN, *all in their individual and
official capacities*,

                    Defendants.[1]

No. 16-CV-9065 (KMK)

OPINION AND ORDER

Appearances:

Damon Wheeler
Brooklyn, NY
*Pro Se Plaintiff*

Alex J. Smith, Esq.
Assistant Corporation Counsel of the City of Middletown
Middletown, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Damon Wheeler ("Plaintiff") filed the instant First Amended Complaint

("FAC"), pursuant to 42 U.S.C. §§ 1983 and 1985(3), against Detective Fred Slanovec

("Slanovec"), Sergeant Jason Jennings ("Jennings"), Sergeant Ronald Magsamen ("Magsamen"),

---

[1] These Defendants are taken from Plaintiff's First Amended Complaint. The Clerk of
Court is directed to update the caption accordingly.

Detective Ahmed Artola ("Artola"), Detective Charles Nyland ("Nyland"), Police Officer

Michael Ribiero ("Ribiero"), Police Officer Patrick Gass ("Gass"), Police Officer Nathanael

DeYoung ("DeYoung"), Supervisors Richard Roe ("Roe") and Jane Doe ("Doe"), Chief Ramon

Bethencourt ("Bethencourt"), and the City of Middletown ("Middletown") (collectively,

"Defendants"). (First Am. Compl. ("FAC") (Dkt. No. 28).)[2] Plaintiff alleges that Defendants

violated his rights under the Fourth and Fourteenth Amendments by conspiring to deprive him of

his liberty without due process. (*Id.* at 3.)[3]

Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. (Dkt. No. 33).) For the following reasons,

Defendants' Motion is granted.

---

[2] The FAC lists Supervisors Jane Doe and Richard Roe as Defendants. (FAC.) These Defendants were also named in the original Complaint, and the Court ordered the New York State Attorney General's Office, the attorney and agent for DOCCS, to identify them pursuant to its obligations under *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), so that the Court could assist Plaintiff in serving them. (Order of Service (Dkt. No. 9).) Although the Court incorrectly determined that the Attorney General's office satisfied its *Valentin* obligations, (Dkt. No. 17), it actually did not identify Jane Doe or Richard Roe, and thus neither of these Defendants has been identified or served, (Dkt. No. 16).

[3] The Complaint also alleges a violation of the Fifth Amendment. (FAC 3.) The Fifth Amendment claim against Defendants is dismissed, because Defendants are not Federal Government officials. *See Hoegemann v. Palma*, No. 16-CV-1460, 2017 WL 455930, at *9 (D. Conn. Feb. 2, 2017) ("[The plaintiff] has not alleged that any federal official violated his Fifth Amendment due process rights. Instead, all of his allegations are against state or municipal officials. Thus, [Plaintiff]'s due process claims may only be brought under the Fourteenth Amendment, not the Fifth Amendment."). However, the Court has construed any Fifth Amendment claims to be incorporated in Plaintiff's Fourteenth Amendment claim.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's FAC and Plaintiff's opposition to the Motion To Dismiss, (Pl.'s Mem. of Law in Supp. of Pl.'s Reply to Defs.' Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 50)), and are taken as true for the purpose of resolving the instant Motion.[4]

On March 29, 2013, Defendant Bethencourt, Chief of the Middletown Police Department, "authorized Defendants Slanovec, Jennings, Magsamen, Artola, Nyland, Ribiero, Gass, De Young, Jane Doe and Richard Roe to execute a Search Warrant on 'Target' [Plaintiff], his 'Person' and his 'Vehicle.'"  (FAC 3; *see also* Decl. of Alex Smith, Esq. ("Smith Decl.") (Dkt. No. 35) Ex. B at 2 ("Warrant 1") (authorizing search of Plaintiff, a "Person," and a 2011 Toyota Sienna, a "vehicle").)  "But[,] instead of abiding by the Order of the Search Warrant, Defendant . . . Artola, the applicant to whom the Search Warrant was granted, conspired with his fellow officers to forge the signature of Middletown City Court Judge Steven Brockett and change the language of the Search Warrant to include the 'Residence' of . . . [P]laintiff."  (Pl.'s Mem. 1.)  Thus, while the first warrant, signed by Judge Brockett of the City of Middletown City Court on March 20, 2013 at 4:25 pm said "N/A" next to the "Premises" section, a second warrant, also showing Judge Brockett's signature at 5:10 pm that same day, authorizes a search of "Premises" at 17 Kensington Way, Middletown, County of Orange, State of New York," and lists "N/A" next to "Vehicles."  (Smith Decl. Ex. B. at 1 ("Warrant 2"); *see also* Compl. Ex. A

---

[4] The FAC was filed in one docket entry, but includes two documents, (FAC), which the Court will "treat[] as one," (Dkt. No. 31.)  For ease of reference, the Court will cite to the ECF-generated page number in the top right corner of the FAC.

(noting "signs of forgery").)[5]  According to Plaintiff, "[i]t was the policy and practice of the City of Middletown to authorize certain police officers, including Defendants . . . , to conspire to use forged search warrants to conduct illegal searches and seizures."  (FAC 8.)  The City of Middletown and Supervisors Doe and Roe allegedly "refused to adequately train, direct, supervise, or control and discipline [D]efendant police officers . . . to prevent the violation of [P]laintiff's constitutional rights."  (*Id.* at 9.)

Pursuant to this unauthorized search, Plaintiff and his wife were both arrested.  (*Id.* at 3–4; Pl.'s Mem. 1.)  Defendants arrested Plaintiff's wife "to intimidate and dissuade [P]laintiff from asserting his rights against" them in a civil case.  (FAC 10.)  Plaintiff was charged with criminal possession of a controlled substance and arraigned before Judge Brockett in Middletown City Court, "where Plaintiff was ordered held without bail in Orange County Jail pending a Grand Jury Indictment or otherwise be released pursuant to [N.Y. Crim. Proc. Law §] 180.80."  (Pl.'s Mem. 1–2.)  On April 3, 2013, Plaintiff appeared before Judge Moreson, prepared to either testify before the Grand Jury, or be released in compliance with § 180.80.  (FAC 4; Pl.'s Mem. 2.)  However, "Judge Moreson ordered . . . [P]laintiff back into the custody of Orange County Jail, stating, 'We'll let you know by 5 o'clock.'"  (FAC 4; *see also* Pl.'s Mem. 2 (same).)  "At around 5 o'clock, [P]laintiff received 'in-house mail' saying that he was

---

[5] Defendants submitted these warrants as exhibits in support of their Motion To Dismiss. (Smith Decl. Ex. B.)  Plaintiff also submitted them as exhibits to his initial Complaint, but did not attach them to the Amended Complaint.  (Compl. Ex. A.)  Because Plaintiff is pro se and is clearly relying on these warrants to support his forgery allegations, the Court will consider them. *See Blakely v. Lew*, No. 13-CV-2140, 2013 WL 6847102, at *1 n.1 (S.D.N.Y. Dec. 30, 2013) (considering exhibits attached only to the original complaint because "it is clear that [the] [p]laintiffs intended to attach [them] to the [a]mended [c]omplaint"), *aff'd*, 607 F. App'x 15 (2d Cir. 2015).

indicted." (FAC 4; *see also* Smith Decl. Ex. E ("Indictment").)[6]  In Plaintiff's view, Defendants

thus "conspired to deprive . . . [P]laintiff of his right to appear before the Grand Jury."  (FAC 4.)

Defendants further conspired to have Plaintiff held in Orange County Jail without bail, seeing a

judge, a lawyer, or discovery material, for 50-60 days.  (*Id.*)

Plaintiff's family eventually retained an attorney, Benjamin Greenwald, Esq., to represent

Plaintiff.  (*Id.*)  Greenwald filed a motion for a bail hearing, and Plaintiff was granted bail set at

$150,000 by Judge Freehill of the Orange County Court.  (*Id.*)  On August 5, 2013, Plaintiff,

through counsel Rachel Trauner, Esq., an attorney at Greenwald's firm, filed a motion to

suppress the evidence seized pursuant to the Search Warrant.  (Letter from Alex Smith, Esq. to

Court (May 29, 2018) (Dkt. No. 52) Ex. 1 ("Suppression Motion").)  The state prosecutor filed

an affirmation in response, arguing that there was probable cause to believe that there was

evidence of a crime located at Plaintiff's residence.  (*Id.* Ex. 2 ("People's Aff.").)[7]  Judge

Freehill denied the motion after considering Plaintiff's motion, the People's response, the

---

[6] Plaintiff now alleges that the Grand Jury did not convene until April 22, 2013.  (Pl.'s Mem. 2.)  Normally, the Court would not consider this allegation, because it contradicts the allegations in the operative complaint.  *See Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases and holding that a court may rely on factual allegations raised for the first time in a pro se plaintiff's opposition papers only if they are consistent with the allegations in the complaint).  However, the Indictment, which Defendants submitted as an exhibit to their Motion, is dated April 22, 2013.  (Smith Decl. Ex. E ("Indictment").)  Drawing all reasonable inferences in favor of Plaintiff, the Court will assume that the Grand Jury did not convene until that date—that is, 19 days after the § 180.80 day.  (Pl.'s Mem. 2.)

[7] Plaintiff claimed that "the Defense d[id] not have a copy of the affidavit" at the time of filing the suppression motion, making arguments about it only on the basis of "information and belief," and not indicating whether the Defense had a copy of the warrant itself.  (Suppression Motion ¶ 8.)  Nor is there any discussion of the two warrants or the possibility of fabrication in the suppression motion.  (*See id.*)  And, although the prosecutor's affirmation in response cites to facts provided in the warrant and the application for the warrant, the copy provided to this Court does not include those documents, so it is unclear whether Defendant later received them in the Orange County Court proceedings.  (People's Aff.)  However, Judge Freehill relied on these documents in denying the suppression motion.  (Smith Decl. Ex. F.)

application for the warrant, and the warrant, concluding "that there was probable cause to issue the warrant for the search [of] the designated location for the designated property." (Smith Decl. Ex. F ("Suppression Decision") 1.)[8] Later, "[o]n June 20, 2014, Plaintiff appeared in Orange County Court before Judge Freehill," and "the People stated their readiness for trial." (FAC 5.) When Greenwald told Plaintiff he had not received a copy of the Search Warrant yet, Plaintiff "demanded in open court that the People release a copy of the Search Warrant." (*Id.*) Judge Freehill ordered counsel to the sidebar, when "it was discovered that the Search Warrant used in this case by . . . [D]efendants was not authorized to search the 'Residence' of . . . [Plaintiff]." (*Id.*)

However, "instead of dismissing the case," the prosecutor, Assistant District Attorney Jason Rosenwasser conspired with Greenwald "to withhold exonerating evidence, and coerced [P]laintiff into a guilty plea," against his will. (*Id.*; *see also* Pl.'s Mem. 2 (same, but alleging conspiracy was "with the City of Middletown and their Police Department"); *see also id.* at 6 (alleging that "Rosenwasser discovered the deficiencies . . . which cause[d] him to abruptly reduce the charges, when the proper legal remedy would be to dismiss the Indictment").) Specifically, "Plaintiff was threatened that he was going to get '[l]ife', and to 'let it go', and [Greenwald] even refused to represent . . . [P]lantiff at trial because according to him, [Rosenwasser] was in on the conspiracy to deprive . . . [P]laintiff of his liberty without due process of law, by withholding this exonerating information." (FAC 5.) Judges Moreson and

---

[8] The Court may take judicial notice of these documents filed in state court to establish the existence of the suppression motion and its denial, but not for the truth of the matter asserted therein. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Freehill joined this conspiracy after they become aware of the forged documents and the defective Indictment. (Pl.'s Mem. 9.) Plaintiff thus pled guilty to criminal possession of a controlled substance in the seventh degree and received "time served." (*Id.* at 2; Smith Decl. Ex. D ("Certificate of Disposition"); *but see* Reply Decl. of Alex Smith, Esq. (Smith Reply Decl.") (Dkt. No. 51) Ex. J. ("Plea Transcript") 5 (showing that Plaintiff testified "No" to questions regarding whether he was forced, threatened, intimidated, or coerced into pleading guilty).) According to Plaintiff, "[i]t was the policy and practice of the City of Middletown to authorize certain police officers, including Defendants . . . . to conspire to . . . withhold[] exonerating information at pretrial hearings, and con[c]eal[] these documents from [criminal] defendants['] lawyer[s] and from the public, in order to avoid civil action." (FAC 8; *id.* at 10 (same).)

As a result of the alleged conspiracy to deprive Plaintiff of his civil rights, "Plaintiff has sustained permanent injuries and suffers from P.T.S.D., and will incur medical bills and other expenses." (*Id.* at 7.) He therefore requests compensatory damages, as well as punitive damages for the alleged bad faith and malicious intent of Defendants. (*Id.* at 8, 11.)

B. Procedural Background

Plaintiff initiated this Action on November 21, 2016 by filing a Complaint against Artola, the City of Middletown, and the City of Middletown Narcotics Unit. (Compl. (Dkt. No. 2).) On May 9, 2017, Plaintiff was granted in forma pauperis status. (Dkt. No. 4.) On May 18, 2017, the Court ordered Plaintiff to file a declaration explaining why this Action should not be dismissed as untimely. (Order (Dkt. No. 5).) Plaintiff filed a declaration and supporting memorandum on June 7, 2017. (Dkt. Nos. 6, 7.)

On July 6, 2017, the Court issued an order directing the Clerk of Court to add the Defendants named in Plaintiff's submissions as Defendants in this Action, directing service on

the named Defendants, and ordering the New York State Attorney General's Office to identify the unnamed Defendants pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997). (Order of Service (Dkt. No. 9).) Pursuant to a letter from Plaintiff identifying the John Doe police officers, (Letter from Plaintiff to Court (Aug. 22, 2017) (Dkt. No. 13)), the Court issued another Order of Service directing service on these Defendants, (Order of Service (Dkt. No. 14)). On August 30, 2017, the Attorney General's Office filed a letter identifying other police officers, (Letter from Alex Smith, Esq., to Court (Aug. 30, 2017) (Dkt. No. 16), and the Court, concluding that Defendants had satisfied their *Valentin* obligations, directed Plaintiff to file an amended complaint, (Dkt. No. 17).

On September 14, 2017, Defendants filed a Motion To Dismiss and accompanying papers. (Dkt. Nos. 18–20.) However, Plaintiff filed the operative First Amended Complaint on October 13, 2017. (FAC.) On October 17, 2017, the Court issued another Order of Service as to the newly named Defendants. (Order of Service (Dkt. No. 29).) On October 24, 2017, Defendants filed a letter requesting leave to file a new Motion To Dismiss. (Letter from Alex Smith, Esq., to Court (Oct. 24, 2017) (Dkt. No. 30).) The Court granted the request and set a briefing schedule. (Dkt. No. 31.)

Defendants filed the instant Motion To Dismiss and accompanying papers on November 21, 2017. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 34); Smith Decl.) However, Plaintiff filed a motion for leave to amend on November 20, 2017, (Dkt. Nos. 37, 39), which Defendants opposed, (Dkt. No. 40). The Court ordered Plaintiff to "inform the Court whether he seeks to replace the First Amended Complaint . . . or add a claim" and "explain if this new Complaint cures the alleged defects identified in the Motion to Dismiss." (Dkt. No. 41.) On December 13, 2017, Plaintiff requested a 60-day extension to

oppose the Motion To Dismiss.  (Letter from Plaintiff to Court (Dec. 13, 2017) (Dkt. No. 42).)

On January 29, 2018, Plaintiff filed another letter reiterating his request and additionally

requesting the Court delay motion practice until resolution of his N.Y. Crim. Proc. Law § 440.10

motion in New York state court.  (Letter from Plaintiff to Court (Jan. 29, 2018) (Dkt. No. 46).)

The Court granted Plaintiff an extension and noted that the FAC is "the operative complaint,"

(Dkt. No. 48), but denied the request to delay the case while the § 440.10 motion was pending,

(Dkt. No. 49).

Plaintiff filed his opposition to the Motion To Dismiss on February 26, 2018.  (Pl.'s

Mem.)  Defendants filed their Reply on March 9, 2018.  (Smith Reply Decl.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*

(alteration and internal quotation marks omitted).  Instead, a complaint's "[f]actual allegations

must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B. Analysis[9]

Defendants argue that the FAC should be dismissed because Plaintiff's claims are time-barred and barred by *Heck v. Humphrey* and, in any event, the FAC fails to state a claim for false arrest, a *Monell* claim against the City of Middletown, and conspiracy. (*See* Defs.' Mem.) The Court will address these arguments separately.

### 1. Statute of Limitations

Defendants argue that Plaintiff's claims are time-barred. (Defs.' Mem. 2–5.)[10] The Supreme Court has held that the statute of limitations for federal claims under 42 U.S.C. § 1983 "is that which the State provides for personal-injury torts." *Wallace v. Kato,* 549 U.S. 384, 387 (2007). Accordingly, federal courts in New York apply a three-year statute of limitations for personal injury actions to § 1983 and § 1985 claims. *See Patterson v. Cty. of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004) (holding so for § 1983 claims); *Chris H. v. New York*, No. 16-CV-6807, 2017 WL 2880848, at *5 (S.D.N.Y. July 5, 2017) (holding so for § 1985 claims), *appeal*

---

[9] The Court notes that, while Plaintiff alleges misconduct by many individuals, not all of these individuals are Defendants in this Action. For example, Plaintiff alleges that various judges and lawyers conspired to and did violate his due process rights in the context of his confinement pending bail, the grand jury proceedings, and his guilty plea. However, Plaintiff did not sue any of these individuals, nor does he allege any plausible connection between these state actors and Defendants to state a conspiracy claim, as the Court will explain later, and thus these claims are not independently actionable.

In any event, the judges and assistant district attorneys identified in the FAC have immunity for actions taken in their official capacities. *See Parker v. Zugibe*, No. 16-CV-4265, 2017 WL 4296795, at *3 (S.D.N.Y. Sept. 26, 2017) (explaining that prosecutors have absolute immunity for all "prosecutorial activities intimately associated with the judicial phase of the criminal process," including authorizing an allegedly illegal search); *id.* at *7 (explaining that judges are entitled to immunity for damages claims relating to their judicial acts, even if they were done with bad faith or malice).

[10] Plaintiff concedes that all state law claims are time-barred and that they must be dismissed for failure to comply with New York General Municipal Law § 50-e(1). (Pl.'s Mem. 4.)

*dismissed*, 714 F. App'x 83 (2d Cir. 2018). However, the question of when a § 1983 claim

accrues is a "question of federal law." *Wallace,* 549 U.S. at 388. "[A]ccrual occurs when the

plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v.*

*City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted). Put

differently, accrual occurs when the plaintiff has "a complete and present cause of action, that is,

when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations and

internal quotation marks omitted). It does not wait "until the [plaintiff] has received judicial

verification that the defendants' acts were wrongful." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir.

1994).

Plaintiff filed his initial Complaint on November 21, 2016. (Compl.) Plaintiff argues

that his due process claim is timely because it did not accrue until June 20, 2014, when he

became aware that the Search Warrant was invalid. (Pl.'s Mem. 3–4.) But, any claim relating to

the illegal search of Plaintiff's home accrued on the date of the search itself—March 29, 2013—

and is thus time-barred. (FAC 3.) *See Forbes v. City of New York*, No. 15-CV-3458, 2016 WL

6269602, at *3 (S.D.N.Y. Oct. 26, 2016) ("An unlawful search claim accrues at the time of the

search." (internal quotation marks omitted)); *DeRaffele v. City of New Rochelle*, No. 15-CV-

282, 2016 WL 1274590, at *10 (S.D.N.Y. Mar. 30, 2016) (holding that the plaintiff's Fourth

Amendment claim accrued on "the date on which the allegedly illegal search and entry occurred"

and collecting cases); *see also Williams v. Savory*, 87 F. Supp. 3d 437, 453 (S.D.N.Y. 2015)

(rejecting as "incorrect" the plaintiff's argument that her § 1983 claim accrued on the date when

she "came to know that her Constitutional protections were compromised" by an earlier

warrantless seizure because her claim accrued when she know of the *harm*). Moreover, to the

extent Plaintiff is alleging false arrest, the statute of limitations begins to run when Plaintiff is

"held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace,* 549 U.S. at 389 (emphasis omitted); *see also Chris H.*, 2017 WL 2880848, at *5 (same). As Plaintiff was arraigned and ordered held without bail the same day of the search and his arrest—March 29, 2013—any false arrest claims are also time-barred. (Pl.'s Mem. 1–2.) This conclusion applies even if the Court considered the § 180.80 day—April 3, 2013—to be the operative date on which he was held pursuant to legal process, or even April 22, 2013—the day he was indicted. (*See id.* at 2.)[11] And, because these claims are all time-barred, so too are Plaintiff's claims that Defendants conspired to commit these constitutional violations. *See Chris H.*, 2017 WL 2880848, at *5 (finding § 1985 claim untimely because the plaintiff's injuries occurred more than three years before he filed suit).[12]

In the alternative, Plaintiff argues that equitable tolling should apply here. (Pl.'s Mem. 4.) "Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order to prevent inequity." *In re U.S. Lines,*

---

[11] Moreover, Plaintiff concedes that he has failed to state a claim for false arrest. (Pl.'s Mem. 5.) Nor could he argue otherwise, in light of his guilty plea. (*See* Certificate of Disposition.) *See Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 428 (S.D.N.Y. 2012) ("When a Section 1983 plaintiff pleads guilty to the underlying or a lesser charge, this fact alone provides sufficient evidence that probable cause existed at the time of the arrest and precludes a false arrest claim under Section 1983." (alterations, italics, and internal quotation marks omitted)); *Hope v. City of New York*, No. 08-CV-5022, 2010 WL 331678, at *2, *4 (E.D.N.Y. Jan. 22, 2010) (same, even where the plaintiff claimed he was coerced into pleading guilty).

[12] Plaintiff alleges that other due process violations occurred while he was held in custody pending trial—that is, the denial of the right to appear before the grand jury, holding him beyond the § 180.80 day, withholding exonerating evidence, and forcing Plaintiff to plead guilty—but these claims do not involve the Defendants in this Action. Moreover, at least some of them are time-barred. (*See* Pl.'s Mem. 2 (alleging that he was held beyond the § 180.80 day, which began on April 3, 2013 and continued at most for 45 days); *id.* (alleging denial of the right to appear before the grand jury, which indicted Plaintiff on April 22, 2013); *id.* (alleging denial of appointment of counsel).) To the extent that Plaintiff alleges Defendants conspired with the actors who committed the due process violations which are not time-barred—that is, withholding evidence and coercing a guilty plea on June 20, 2014—the Court explains later why such conspiracy claims are inadequately pled.

*Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (internal quotation marks omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (internal quotation marks omitted); *Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811, at *9 (S.D.N.Y. Sept. 30, 2016) (same). Construing Plaintiff's submissions to raise the strongest argument they suggest, he is arguing that Defendants fraudulently concealed the forged search warrant, which prevented him from acquiring sufficient awareness of his potential claim to timely file this lawsuit. (*See* Pl.'s Mem. 4 (citing *Pearl*, 296 F.3d at 82–83).) However, this is not a case in which Plaintiff can "show that it would have been *impossible* for a reasonably prudent person to learn about his . . . cause of action" prior to the statutory period commencing. *Pearl*, 296 F.3d at 85 (internal quotation marks omitted).

Plaintiff was represented by counsel during the criminal proceedings in state court, who could have sought and reviewed the search warrant(s) in question during the statute of limitations. (Suppression Motion; FAC 4.) *See Thompson v. Rovella,* No. 15-CV-01742, 2017 WL 601399, at *6 (D. Conn. Feb. 14, 2017) (holding that equitable tolling did not apply in case where the plaintiff claimed that evidence was wrongfully withheld from him during criminal proceedings because the statute of limitations began to run after that and because the "[p]laintiff, by and through counsel," filed another claim indicating knowledge of the facts comprising his current federal complaint), *reconsideration denied*, 2017 WL 3269077 (D. Conn. Aug. 1, 2017), *aff'd*, 2018 WL 2427585 (2d Cir. May 30, 2018); *Noguera v. Hasty*, No. 99-CV-8786, 2000 WL 1011563, at *13 (S.D.N.Y. July 21, 2000), *adopted in part by* 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001) (finding that the plaintiff was not "entitled to equitable tolling" because she "was

represented by counsel in her criminal case," whom she informed of the basis of her eventual

civil complaint); *cf. Gemmill v. Westchester Jewish Ctr.*, No. 11-CV-4821, 2012 WL 1871590, at

*3 n.24 (S.D.N.Y. Apr. 30, 2012) ("The law in the Second Circuit is clear that if an individual is

represented by counsel at any time during the period in which the statute of limitations runs,

there can be no equitable tolling.") (collecting cases).  Moreover, Plaintiff's counsel filed a

suppression motion challenging the basis for the search warrant on August 5, 2013.

(Suppression Motion.)  Although Plaintiff alleges his counsel had never received a copy of the

search warrant until the day of his plea allocution, (FAC 5),—that is, June 20, 2014—that claim

is simply not plausible in light of the fact that he made a counseled suppression motion

challenging the validity of the search of his home, which resulted in an opinion in which the state

court judge discussed the probable cause for the warrant, (Suppression Decision).[13]  At the very

latest, Plaintiff's counsel should have known about the basis for the warrant and had access to it

by August 20, 2013, when Judge Freehill denied the suppression motion, giving Plaintiff time

within the statute of limitations—which expired at the latest in April 2016—to file a lawsuit

alleging an unlawful search or false arrest.

        In any event, even if Defendants concealed the fact that the second Warrant was

definitively forged—a fact which, "if known, would enhance . . . [P]laintiff's ability to prevail as

to a cause of action of which . . . [P]laintiff was previously aware"—this alone is insufficient to

warrant equitable tolling when Plaintiff had access to at least the initial warrant and first-hand

knowledge of the events of the search and his arrest.  *Pearl*, 296 F.3d at 84; *see also Khalil v.

*Pratt Inst.*, No. 16-CV-6731, 2018 WL 705306, at *2 (E.D.N.Y. Feb. 2, 2018) ("[A]llegations

---

[13] Indeed, the fact that Plaintiff had access to both purported warrants and attached them as exhibits to his initial pro se complaint, prior to any discovery being conducted in this case, undermines his claim that he was never given access to it.  (Compl Ex. A.)

that [the] defendant withheld documents from [the] plaintiff, without more, would be insufficient to establish that such tolling applies here. [The] [p]laintiff must also allege facts demonstrating that [the] defendant's withholding of those documents deprived him of information needed to file a lawsuit." (alterations and internal quotation marks omitted)); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 291 (S.D.N.Y. 2011) ("[T]o toll a limitations period, a plaintiff must allege that the defendant concealed the cause of action's existence, and that the plaintiff remained unaware of it until some point within the applicable statutory period of commencing the action.").[14] Put differently, Plaintiff's argument here is that the first warrant did not authorize the search of his home, but Defendants forged a second warrant to authorize such a search. But, in light of the documents filed in state court, Plaintiff either knew only about the first warrant within the statute of limitations, meaning he could have filed a lawsuit on the basis that the warrant did not authorize a search of his home, or he had access to both warrants, and was able to file a lawsuit arguing that the second one was forged—either way, Plaintiff has not plausibly pled that he was unaware of crucial facts precluding him filing this § 1983 lawsuit. Moreover, Plaintiff does not allege "that he has been pursuing his rights diligently." *Mottahedeh*, 794 F.3d at 352; *see also Bush v. Lantz*, No. 06-CV-410, 2009 WL 522940, at *2 (D. Conn. Mar. 2, 2009) (noting that the plaintiff did not "offer evidence that he exercised due diligence in seeking help from his . . . counsel in the criminal case"). Therefore, he has not met his burden of showing that the Court should equitably toll the statute of limitations here. *See Davis*, 2016 WL 5720811, at

---

[14] Moreover, as explained later, Plaintiff's allegations of a conspiracy to violate his due process rights, including to conceal the Search Warrant from Plaintiff, "are wholly conclusory and implausible," and therefore "the Court also rejects Plaintiff's equitable tolling argument." *Sales v. New York City Transit Auth.*, No. 08-CV-3420, 2010 WL 87758, at *5 n.3 (S.D.N.Y. Jan. 7, 2010).

*9 (describing standard for equitable tolling). The Court thus grants Defendants' Motion To Dismiss the unlawful search and false arrest claims as untimely.[15]

### 2. *Monell* Claim

Even assuming Plaintiff's claims are not time-barred, Defendants argue that Plaintiff fails to plausibly state a *Monell* claim against the City of Middletown. (Defs.' Mem. 10–13.) "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by

---

[15] Because the Court finds Plaintiff's claims untimely, it need not address Defendants' alternative argument that they are instead barred by *Heck v. Humphrey*, 512 U.S. 477 (1944). (Defs.' Mem. 8–10.) In any event, it would likely be premature at this stage, and on this record, to find Plaintiff's claims barred by *Heck*, because it is impossible to tell what connection, if any, exists between Plaintiff's conviction, pursuant to a guilty plea, and the evidence obtained from the allegedly illegal search of Plaintiff's residence on March 29, 2013. *See Magnotta v. Putnam Cty. Sheriff*, No. 13-CV-2752, 2014 WL 705281, at *7 (S.D.N.Y. Feb. 24, 2014) (so holding because "there [wa]s no factual record whatsoever as to the connection between [the plaintiff's] conviction and [the] evidence that he alleges was obtained illegally during the search" and therefore "a dismissal under *Heck* [would] be improper because it was not clear that a favorable determination on the § 1983 claim would necessarily impugn the validity of the plaintiff's criminal conviction"). Moreover, the Court notes that, if it were to find Plaintiff's claims barred by *Heck* because success "would necessarily imply that . . . [P]laintiff's conviction was unlawful . . . the cause of action [would] not accrue until the conviction has been invalidated," thereby changing the statute of limitations analysis. *Kelly v. Lohan*, No. 08-CV-2205, 2008 WL 4693317, at *2 (E.D.N.Y. Oct. 23, 2008).

government officials responsible for establishing the municipal policies that caused
the particular deprivation in question; (3) a practice so consistent and widespread
that, although not expressly authorized, constitutes a custom or usage of which a
supervising policy-maker must have been aware; or (4) a failure by policymakers
to provide adequate training or supervision to subordinates to such an extent that it
amounts to deliberate indifference to the rights of those who come into contact with
the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted);

*Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of

establishing *Monell* liability).  Moreover, a plaintiff also must establish a causal link between the

municipality's policy, custom, or practice and the alleged constitutional injury.  *See City of Okla.*

*v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police

misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the

'moving force' behind a *constitutional* violation.  There must at least be an affirmative link

between[, for example,] the training inadequacies alleged, and the particular constitutional

violation at issue.").

Plaintiff's submissions are devoid of any factual allegations meeting these requirements.

Plaintiff alleges that "[i]t was the policy and practice of the City of Middletown to authorize

certain police officers . . . to conspire to use forged search warrants to conduct illegal searches

and seizures," to conspire to "withhold[] exonerating information at pretrial hearings, and

con[c]eal[] these documents from defendants['] lawyer and from the public," and that "[t]his

policy and practice . . . encouraged and caused constitutional violations by police officers,"

including the one against Plaintiff.  (FAC 8; *see also id.* at 10 (same).)  Although this sentence

uses the phrase "policy and practice," it is entirely conclusory and devoid of any specific factual

allegations regarding what the policy stated, what specific act was taken by a final policymaker

of the City of Middletown regarding searches and arrests, or how widespread these alleged

constitutional violations were.  *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir.

2015) (dismissing the plaintiff's *Monell* claim because she offered only a "general and

conclusory allegation that there was . . . a policy"); *Lara-Grimaldi v. Cty. of Putnam*, No. 17-

CV-622, 2018 WL 1626348, at *20 (S.D.N.Y. Mar. 29, 2018) (stating that "[c]onclusory

allegations that there was . . . a policy or custom, without identifying or alleging supporting facts,

is insufficient to state a claim" and collecting cases); *Cordero v. City of New York*, 282 F. Supp.

3d 549, 563 (E.D.N.Y. 2017) ("Conclusory allegations that officers engage in falsification to

justify arrests for collateral objectives outside the ends of justice . . . are insufficient without

proof of custom or practice." (internal quotation marks omitted)).  Indeed, Plaintiff alleges in his

opposition that the City's "standard of procedure regarding search warrants" requires probable

cause and a valid search warrant, thereby belying his claims that a policy or practice of the City

caused the allegedly illegal search here.  (Pl.'s Mem. 5–6.)  *See Tyrrell v. Seaford Union Free

Sch. Dist.*, 792 F. Supp. 2d 601, 632 (E.D.N.Y. 2011) (dismissing the plaintiff's claim as "in

direct violation of *Monell*" where the "plaintiff's argument [wa]s not that [the] defendants acted

pursuant to an official discriminatory policy. . . . Rather, [the] [p]laintiff's argument [wa]s . . .

that [a defendant] failed to act in accordance with [the] policy").  Thus, to the extent Plaintiff is

attempting to hold the City of Middletown liable under a theory of respondeat superior because

of its employees' actions, he fails to plausibly allege *Monell* liability.  (*See* FAC 9 ("The City of

Middletown is liable for compensatory damages under the doctrine of respondeat superior for the

intentional torts of [the other] Defendants . . . who committed [them] within the scope of their

employment.").)  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a

municipality may not be liable under § 1983 "by application of the doctrine of respondeat

superior" (italics omitted)).  Similarly, merely alleging that supervisors Jane Doe and Richard

Roe "encouraged and tolerated the policies and practices described [above]," (FAC 9), without any details regarding whether they were supervising *policymakers* or whether they were aware of a widespread and consistent custom of forging search warrants, searching without warrants, or otherwise committing the identified due process violations, is insufficient. *See Brandon*, 705 F. Supp. 2d at 276 (describing this *Monell* requirement).

Similarly, Plaintiff's allegations regarding the alleged failure to train and supervise the Defendant officers are purely conclusory and speculative. (*See* FAC 9 ("Defendants Jane Doe and Richard Roe refused to adequately train, direct, supervise, or control and discipline defendant police officers named herein so as to prevent the violation of [P]laintiff's constitutional rights."); *id.* at 10 ("The City of Middletown failed to provide adequate training, supervision and control of Defendants . . . while failure constitutes negligence."); Pl.'s Mem. 5 ("Plaintiff's claim against the City of Middletown for failure to train and failure to supervise defendant police officers who are employed by the City . . . should survive . . . *Monell*.").) To establish municipal liability based on a failure to train, Plaintiff must show that the "inadequate training reflects deliberate indifference to constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (alterations and internal quotation marks omitted). To establish deliberate indifference, a plaintiff must demonstrate that: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training . . . will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotation marks omitted). Plaintiff's failure to train claim does not allege facts satisfying any of

these requirements, and the Court cannot simply infer that the requirements have been met. *See Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at \*13 (S.D.N.Y. Mar. 26, 2015) ("[The p]laintiff need not prove these elements, but still must plead them sufficiently to make out a plausible claim for relief.").  Nor does Plaintiff "identify a specific deficiency in [the City of Middletown's] training program," *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (internal quotation marks omitted); there is no discussion of how, specifically, the City's training program for police officers conducting searches or providing evidence to criminal defendants pre-trial was deficient, *see Tieman*, 2015 WL 1379652, at \*22 ("To allege a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training.").  Simply put, as the Court has already explained to Plaintiff in another case, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury.  A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."  *Wheeler v. Wallkill*, No. 16-CV-7441, 2017 WL 2999503, at \*6 (S.D.N.Y. July 13, 2017) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)); *see also Lara-Grimaldi*, 2018 WL 1626348, at \*20 ("Plaintiff's mere allegations of inadequate training and/or supervision are insufficient to demonstrate the existence of [a municipal] custom because they are not supported by factual details."  (alterations and internal quotation marks omitted)).[16]

---

[16] To the extent Plaintiff is attempting to hold the city of Middletown liable for a "single act" by a City employee—that is, the prosecutor, Artola, or even Bethencourt—this is also insufficient to satisfy *Monell*.  *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532

The Court therefore grants the City of Middletown's Motion To Dismiss Plaintiff's claims against it.

### 3. Conspiracy Claim

Defendants also argue that, even assuming they are timely, Plaintiff's conspiracy allegations should be dismissed. (Defs.' Mem. 13–17.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Corsini v. Brodsky*, 2018 WL 1773501, at *2 (2d Cir. April 13, 2018) (same) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)).[17] Plaintiff has failed to satisfy this standard.[18]

---

(S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and internal quotation marks omitted)).

[17] Plaintiff cites criminal cases describing the law of criminal conspiracy, but he cannot bring such a claim as a private citizen in a civil lawsuit. (*See* Pl.'s Mem. 9–10.) *See Cato v. Gansberg,* No. 15-CV-5323, 2016 WL 659734, at *2 (E.D.N.Y. Feb. 17, 2016) ("Plaintiff cannot avail himself of those federal criminal statutes, as private persons have no authority to institute criminal prosecutions in the United States."); *Salvador v. State of New York*, No. 12-CV-7299, 2013 WL 12080930, at *1 (S.D.N.Y. Feb. 19, 2013) ("The Supreme Court has held that a private party does not have standing to file or prosecute a criminal case because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) (per curiam)), *aff'd*, 550 F. App'x 56 (2d Cir. 2014).

[18] Plaintiff also claims to be asserting a claim under 42 U.S.C. § 1985(3). (FAC 1.) "To make out a claim under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Colon v. Mark-Viverito*, No. 16-CV-4540, 2018 WL 1565635, at *9 (S.D.N.Y. Mar. 26, 2018) (internal quotation marks omitted). In addition to failing to plausibly allege an agreement, which the Court explains below, Plaintiff also fails to state a claim under § 1983(5) because he has not plausibly alleged a conspiracy that was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory

Plaintiff alleges several different conspiracies in his submissions. First, he alleges that the Defendants conspired together to deprive him of his due process rights, including executing the Search Warrant on his "Residence," which was not authorized, and in forging that Search Warrant. (Pl.'s Mem. 1. ("Artola . . . conspired with his fellow officers to forge the signature . . ."); FAC 3 ("[T]he above-named defendants conspired to violate the civil rights of . . . [P]laintiff by executing the Search Warrant on the 'Residence' of . . . [P]laintiff, which these [D]efendants were not authorized [to do].")"; *id.* at 6–8, 10 (same).) As an initial matter, this conspiracy claim is barred by the intracorporate conspiracy doctrine, because Defendants all worked for the City of Middletown Police Department. (FAC 1–2.) *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867–68 (2017) ("Under . . . the intracorporate-conspiracy doctrine . . . an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."); *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming the dismissal of a conspiracy claim where defendants were all employees of the municipal police department); *Danielak v. City of New York*, No. 02-CV-2349, 2005 WL 2347095, at *13-14 (E.D.N.Y. Sept. 26, 2005) (barring conspiracy claims because all individual defendants were employed by the New York City Police Department and acted within the scope of their employment while arresting plaintiff), *aff'd*, 209 F. App'x. 55 (2d Cir. 2006). Even if it were not barred by that doctrine, Plaintiff's allegations are purely conclusory, lacking any specific factual allegations regarding what agreement was made, between who, and when. *See Ciambriello*, 292 F.3d at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

animus." *Id.* at *9 (internal quotation marks omitted); *see also Thomas v. DeCastro*, No. 14-CV-6409, 2018 WL 1322207, at *12 (S.D.N.Y. Mar. 13, 2018) (same). Indeed, Plaintiff does not mention his race or any other protected class in any of his submissions.

dismissed." (internal quotation marks omitted)); *Best v. Schneider*, No. 12-CV-6142, 2016 WL 1593354, at *7 (E.D.N.Y. Mar. 30, 2016) ("A plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (internal quotation marks omitted)), *adopted by* 2016 WL 1601194 (E.D.N.Y. Apr. 20, 2016); *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858925, at *5 (S.D.N.Y. Feb. 29, 2016) ("Allegations of a conspiracy to violate civil rights must be pleaded with specificity, and an otherwise invalid § 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'" (alterations and internal quotation marks omitted)); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009) (dismissing conspiracy claim where the plaintiff "provide[d] no evidence, absent the fact that the [i]ndividual [d]efendants worked together, that . . . an agreement existed").[19]

Plaintiff also alleges various other acts purportedly taken in connection with a conspiracy to violate his due process rights. (*E.g.* FAC 3 (alleging that all defendants "showed an expressed and/or implied agreement to deprive Plaintiff of his liberty without due process of law, and used malicious abuse of process, and also conspired to violate [P]laintiff's rights by withholding exonerating information."); *id.* at 6 (alleging that defendants "had 'a meeting of the

_____

[19] Indeed, except for perhaps Artola and Bethencourt, (FAC 3, Pl.'s Mem. 1), Plaintiff has failed to plausibly allege the personal involvement of each Defendant in the alleged violations of his constitutional rights—a prerequisite to holding them individually liable under § 1983. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). For example, he does not specifically allege which Defendants authorized the search, which Defendants participated in the search, and which Defendants forged the Search Warrant or were otherwise aware it was forged. This is an independent reason to dismiss the claims against these Defendants. *See, e.g.*, *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (concluding that the complaint failed to allege personal involvement when "the only named reference to [the] defendants . . . is in the caption of the [c]omplaint, and the only additional references to [the] defendants are merely conclusory statements about their personal involvement").

minds' to deprive [P]laintiff of his Fourth, Fifth, Sixth and Fourteenth Amendment rights"); *id.* at 8 (same).) But, again, he does not allege *who* entered this conspiracy, *what* was agreed to, or what *overt acts* were taken in furtherance of this agreement. *See Pangburn*, 200 F.3d at 72. Indeed, the only "overt acts" Plaintiff relies on were all committed post-arrest, when Plaintiff was in the custody of the courts and awaiting trial. (FAC 4–5 (listing "overt acts"); Pl.'s Mem. 1–2 (describing post-arraignment due process violations).) There is no allegation whatsoever that *any* Defendant was involved in these proceedings. Rather, Plaintiff alleges that these constitutional violations were committed by Judges Moreson and Freehill and Assistant District Attorney Rosenwasser. However, merely asserting that these non-Defendants "joined the conspiracy," without alleging that they agreed with any of Defendants to commit the identified constitutional violations, is insufficient to plausibly allege a conspiracy claim against Defendants.[20] (Pl.'s Mem. 2 ("Rosenwasser joined this conspiracy when . . . [he] discovered Plaintiff's complaints to have merit, . . . [and] conspired with the City of Middletown and their Police Department . . . by forcing Plaintiff to plead guilty."); *id.* at 9 (alleging that Rosenwasser and Judges Moreson and Freehill "joined the conspiracy" after "they became aware of the forged documents and the defective indictment").) The Court therefore grants Defendants' Motion To Dismiss Plaintiff's conspiracy claims.

---

[20] The Court also notes that some of the actions taken after Plaintiff's arrest and arraignment, even if they were somehow attributable to Defendants or the object of a conspiracy, are not constitutional violations and thus cannot form the basis of a § 1983 conspiracy claim. *Pangburn* 200 F.3d 72 (requiring an agreement "to act in concert to inflict an unconstitutional injury"); *see also Harrison v. Griffin*, No. 14-CV-4452, 2017 WL 3105853, at *4 (E.D.N.Y. July 20, 2017) ("A violation of CPL § 180.80 raises a question of state statutory procedure only and implicates no federal constitutional rights." (internal quotation marks omitted)), *certificate of appealability denied*, 2018 WL 898677 (2d Cir. Jan. 9, 2018*); Gayle v. Senkowski*, No. 02-CV-1694, 2004 WL 503796, at *4 (E.D.N.Y. Mar. 16, 2004) ("A defendant has no clearly established federal constitutional right to testify before the grand jury that indicted him.").

<u>III. Conclusion</u>

For the foregoing reasons, Defendants' Motion to Dismiss is granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Within 14 days of the date of this Opinion, the New York State Attorney General's Office, the attorney and agent for DOCCS, is directed to comply with the Court's previous *Valentin* Order and provide the names and service addresses of Defendants Jane Doe and Richard Roe to Plaintiff and the Court. (*See* Dkt. No. 14.)

Within 30 days of receiving this information, Plaintiff must file a Second Amended Complaint naming the Jane Doe and Richard Roe Defendants. Once Plaintiff has filed a Second Amended Complaint, the Court will direct the Clerk of Court to fill out a USM-285 form for these Defendants, issue a summons, and deliver all of the paperwork necessary to the Marshals Service to effect service upon Defendants Jane Doe and Richard Roe.

Plaintiff should also include within that Second Amended Complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The Second Amended Complaint will replace, not supplement, all previous complaints. The Second Amended Complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, this Action could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 33), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: June 8, 2018
     White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE