UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAMON WHEELER,

                            Plaintiff,

    v.

DET. FRED SLANOVEC; SGT. JASON JENNINGS; SGT. RONALD MAGSAMEN; DET. AHMED ARTOLA; DET. CHARLES NYLAND; P.O. MICHAEL RIBIERO; P.O. PATRICK GASS; P.O. NATHANAEL DEYOUNG; SGT. JEFFRY THOELEN; BENJAMIN GREENWALD, ESQ.; A.D.A. JASON ROSENWASSER; CHIEF RAMON BETHENCOURT; THE CITY OF MIDDLETOWN, *all in their individual and official capacities*,

                            Defendants.

No. 16-CV-9065 (KMK)

OPINION AND ORDER

Appearances:

Damon Wheeler
Brooklyn, NY
*Pro Se Plaintiff*

Alex J. Smith, Esq.
Assistant Corporation Counsel of the City of Middletown
Middletown, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    Pro se Plaintiff Damon Wheeler ("Plaintiff") filed the operative Second Amended Complaint, pursuant to 42 U.S.C. §§ 1983 and 1985(3), against Detective Fred Slanovec ("Slanovec"), Sergeant Jason Jennings ("Jennings"), Sergeant Ronald Magsamen ("Magsamen"), Detective Ahmed Artola ("Artola"), Detective Charles Nyland ("Nyland"), Police Officer

Michael Ribiero ("Ribiero"), Police Officer Patrick Gass ("Gass"), Police Officer Nathanael DeYoung ("DeYoung"), Sergeant Jeffry Thoelen ("Thoelen"), Chief Ramon Bethencourt ("Bethencourt"), and the City of Middletown ("Middletown") (collectively, "Defendants"). (Second Am. Compl. ("SAC") (Dkt. No. 60).)[1] Plaintiff alleges that Defendants violated his rights under the Fourteenth Amendment by conspiring to withhold exonerating evidence, and to deprive him of his liberty without due process. (*Id.* at 1.)

Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 67).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's First Amended Complaint, (First Am. Compl. ("FAC") (Dkt. No. 28)), Plaintiff's Opposition to Defendants' Original Motion To Dismiss, (Pl.'s Mem. of Law in Opp'n to Orig. Mot. To Dismiss ("Pl.'s Orig. Mem.") (Dkt. No. 50)), Plaintiff's Second Amended Complaint, Plaintiff's Opposition to the instant Motion To Dismiss, (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 71)), and judicially-noticeable documents attached to Defendants' Declaration, (Defs.' Decl. in Supp. of Mot. ("Defs.' Decl.") (Dkt No. 68)), and are taken as true for the purpose of resolving the instant Motion.[2]

---

[1] Although Plaintiff titled the document "Third Amended Complaint," it is in fact Plaintiff's Second Amended Complaint, and the Court will refer to it accordingly. Additionally, because the Second Amended Complaint uses inconsistent paragraph numbering, the Court will cite to the ECF-generated page numbers at the upper right corner of each page.

[2] Plaintiff's Second Amended Complaint omits most of the specific facts asserted in the First Amended Complaint, instead largely restating the elements of his causes of action without

On March 29, 2013, Defendants Slanovec, Jennings, Magsamen, Nyland, Ribiero, Gass and DeYoung participated in a search of Plaintiff's home pursuant to a "forged search warrant"; Plaintiff alleges that all Defendants were "aware" that the search warrant was forged. (SAC 8; *see also* SAC Ex. A-2 ("Warrant 2").) Plaintiff alleges that Defendant Artola, "the applicant to whom the Search Warrant was granted, conspired with his fellow officers to forge the signature of Middletown City Court Judge Steven Brockett and change the language of the Search Warrant [issued] to include the 'Residence' of . . . [P]laintiff." (Pl.'s Orig. Mem. 1; SAC Ex. A-1 ("Warrant 1"); Warrant 2.) Thus, while the first warrant, signed by Judge Brockett of the City of Middletown City Court on March 20, 2013 at 4:25 p.m. said "N/A" next to the "Premises" section, but includes vehicle information, a second warrant, also showing Judge Brockett's signature at 5:10 p.m. that same day, authorizes a search of "Premises" at 17 Kensington Way, Middletown, County of Orange, State of New York," and lists "N/A" next to "Vehicles." (*See* Warrant 1 (noting "sign[s] of forgery"); Warrant 2.)

Pursuant to this allegedly unauthorized search, Plaintiff was arrested. (FAC 3–4; Pl.'s Orig. Mem. 1.) Defendants allegedly also arrested Plaintiff's wife "to intimidate and dissuade [P]laintiff from asserting his rights against" them in a civil case. (FAC 10.) Plaintiff was charged with criminal possession of a controlled substance and arraigned before Judge Brockett

---

factual support. In light of Plaintiff's pro se status, the Court will rely on the facts asserted in Plaintiff's First and Second Amended Complaints and his memoranda opposing Defendants two Motions To Dismiss, as the Second Amended Complaint includes insufficiently detailed factual allegations to state any claim on its own. *See Clack v. Torre*, No. 10-CV-1905, 2012 WL 3779135, at *2 (D. Conn. Aug. 30, 2012) ("[A]lthough the [p]laintiff did not specifically incorporate or refer to the extensive factual allegations contained in his [prior] [c]omplaint in the comparatively brief [subsequent] Complaint, the [c]ourt will consider the two pleadings together as constituting the operative complaint in this matter.").

Additionally, the FAC was filed in one docket entry, but includes two documents, (FAC), which the Court will "treat[] as one." (Dkt. No. 31.) For ease of reference, the Court will cite to the ECF-generated page number in the top right corner of the FAC.

in Middletown City Court, "where Plaintiff was ordered held without bail in Orange County Jail pending a Grand Jury Indictment or otherwise be released pursuant to [N.Y. Crim. Proc. Law §] 180.80." (Pl.'s Orig. Mem. 1–2.)

Plaintiff's family eventually retained an attorney, Benjamin Greenwald, Esq. ("Greenwald"), to represent Plaintiff. (FAC 4.) Greenwald filed a motion for a bail hearing, and Plaintiff was granted bail set at $150,000 by Judge Freehill of the Orange County Court. (*Id.*) On August 5, 2013, Plaintiff, through counsel Rachel Trauner, Esq. ("Trauner"), an attorney at Greenwald's firm, filed a motion to suppress the evidence seized pursuant to the Search Warrant. (Defs.' Decl. Ex. F ("Suppression Motion").) The state prosecutor filed an affirmation in response, arguing that there was probable cause to believe that there was evidence of a crime located at Plaintiff's residence. (Defs.' Decl. Ex. G ("People's Aff.").)[3] Judge Freehill denied the motion after considering Plaintiff's motion, the People's response, the application for the warrant, and the warrant, concluding "that there was probable cause to issue the warrant for the search [of] the designated location for the designated property." (Defs.' Decl. Ex. I ("Suppression Decision") 1.)[4] Later, "[o]n June 20, 2014, Plaintiff appeared in Orange County Court before Judge Freehill," and "the People stated their readiness for trial." (FAC 5; SAC 5.) Plaintiff then "made a sudden outburst that he had yet to see any paperwork regarding the March

---

[3] There is no discussion of the two warrants or the possibility of fabrication in the suppression motion. However, Judge Freehill relied on these documents in denying the suppression motion. (*See id.*)

[4] The Court may take judicial notice of the documents filed in state court to establish the existence of the suppression motion and its denial, but not for the truth of the matters asserted therein. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

29, 2013 search and arrest." (SAC 5.) After a brief side-bar with Judge Freehill, Rosenwasser, and Greenwald, Rosenwasser and Greenwald "agreed to withhold exonerating evidence and conceal the existence of the definitively forged search warrant in question." (*Id.*)

Greenwald "then coerced [P]laintiff into entering an involuntary guilty plea . . . ." (*Id.*) Specifically, Greenwald "threaten[ed] [P]laintiff that he would get life in prison if he didn't accept the guilty plea, and refus[ed] to give [P]laintiff copies of any paperwork associated with this criminal matter, saying that '. . . the case is sealed . . .' and '. . . you can't appeal a guilty plea . . .'" (SAC 17.) Plaintiff thus "enter[ed] an involuntary guilty plea" and received "time served." (*Id.* at 5.) According to Plaintiff, "[t]he City of Middletown . . . [was] aware of widespread and consistent customs of members of the City of Middletown P.D. forging search warrants, searching without warrants, tampering with evidence, concealing evidence[,] and using excessive force on private citizens without reasonable cause, which is a deficiency in the municipality's training." (*Id.* at 12.) The City of Middletown allegedly "failed to provide adequate training, supervision[,] and control of [D]efendants Artola, Slanovec, Jennings, Magsamen, Nyland, Ribiero, Gass, DeYoung, Thoelen[,] and Bethencourt, [which] failure constitutes negligence." (*Id.* at 15.) Additionally, Greenwald and Rosenwasser "conspir[ed] to withhold exonerating evidence, concealing this cause of action and coercing [P]laintiff into a guilty plea . . . in violation of [his] Fourteenth Amendment right[s]." (*Id.* at 16.) Plaintiff alleges that he ultimately learned about the two warrants on October 26, 2016, when his attorney in an unrelated criminal matter mailed them to him as part of discovery in that action. (*Id.* at 8.)

5

As a result of the alleged conspiracy to deprive Plaintiff of his civil rights, "Plaintiff has sustained permanent injuries and . . . will incur medical bills and other expenses." (*Id.* at 16.) He therefore requests compensatory and punitive damages. (*Id.* at 13, 19.)[5]

B.  Procedural Background

Plaintiff initiated this Action on November 21, 2016 by filing a Complaint against Artola, the City of Middletown, and the City of Middletown Narcotics Unit. (Compl. (Dkt. No. 2).) On May 9, 2017, Plaintiff was granted in forma pauperis status. (Dkt. No. 4.) On May 18, 2017, the Court ordered Plaintiff to file a declaration explaining why this Action should not be dismissed as untimely. (Order (Dkt. No. 5).) Plaintiff filed a declaration and supporting memorandum on June 7, 2017. (Dkt. Nos. 6, 7.)

On July 6, 2017, the Court issued an order directing the Clerk of Court to add the Defendants named in Plaintiff's submissions as Defendants in this Action, directing service on the named Defendants, and ordering the New York State Attorney General's Office to identify the unnamed Defendants pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997). (Order of Service (Dkt. No. 9).) Pursuant to a letter from Plaintiff identifying the John Doe police officers, (Dkt. No. 13), the Court issued another Order of Service directing service on these Defendants, (Order of Service (Dkt. No. 14)). On August 30, 2017, the Attorney General's Office filed a letter identifying other police officers, (Dkt. No. 16), and the Court, concluding that Defendants had satisfied their *Valentin* obligations, directed Plaintiff to file an amended complaint, (Dkt. No. 17).

---

[5] Plaintiff also handwrote on one of his exhibits that on March 29, 2014, Artola pulled Plaintiff from his car without a search warrant or arrest warrant "and beat [him] unconscious." (SAC Ex. A-3.) However, Plaintiff asserts that these allegations are the subject of a separate pending federal lawsuit, so the Court will not address those allegations here. (*Id.*)

On September 14, 2017, Defendants filed a Motion To Dismiss and accompanying papers. (Dkt. Nos. 18–20.) Plaintiff filed the First Amended Complaint on October 13, 2017. (FAC.) On October 17, 2017, the Court issued another Order of Service as to the newly named Defendants. (Order of Service (Dkt. No. 29).)

Defendants filed a Motion To Dismiss and accompanying papers on November 21, 2017. (Dkt. Nos. 33–35.) Plaintiff filed a Motion for leave to amend on November 20, 2017, (Dkt. Nos. 37, 39), which Defendants opposed, (Dkt. No. 40). The Court ordered Plaintiff to "inform the Court whether he seeks to replace the First Amended Complaint . . . or add a claim," and "explain if this new Complaint cures the alleged defects identified in the Motion to Dismiss." (Dkt. No. 41.) On December 13, 2017, Plaintiff requested a 60-day extension to oppose the Motion To Dismiss. (Dkt. No. 42.) On January 29, 2018, Plaintiff filed another letter reiterating his request and additionally requesting the Court delay motion practice until resolution of his N.Y. Crim. Proc. Law § 440.10 motion in New York state court. (Dkt. No. 46.) The Court granted Plaintiff an extension and noted that the FAC is "the operative complaint," (Dkt. No. 48), but denied the request to delay the case while the § 440.10 motion was pending, (Dkt. No. 49). Plaintiff filed his opposition to the Motion To Dismiss on February 26, 2018. (Pl.'s Orig. Mem.) Defendants filed their reply on March 9, 2018. (Dkt. No. 51.)

On June 8, 2018, the Court granted Defendants' Motion To Dismiss. (*See* Op. & Order on Mot. To Dismiss ("Opinion") (Dkt. No. 53).) The Court held that Plaintiff's Fourth Amendment claims for unlawful search of his home were time-barred. (*Id.* at 13–18.) The Court also held that Plaintiff failed to state a claim against the City of Middletown under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* at 18–23.) Finally, the Court held that

Plaintiff failed to sufficiently plead an agreement as required to state a claim for § 1983 conspiracy. (*Id.* at 23–26.)

Plaintiff filed the Second Amended Complaint on August 24, 2018. (SAC.) The Court ordered service on Thoelen on September 6, 2018. (Dkt. No. 63.) On November 5, 2018, with leave of the Court, Defendants filed the instant Motion To Dismiss. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 69); Defs.' Decl.) Plaintiff filed an opposition on November 29, 2018, (Pl.'s Mem.), and Defendants filed a reply on December 10, 2019, (Defs.' Reply in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 72)).

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citation, and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, citation, and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (citation omitted). Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citation omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if

8

a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant['s] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013) (citation omitted), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) (citation omitted).

B. Analysis

Defendants argue that the Second Amended Complaint should be dismissed because Plaintiff's claims are time-barred and, in any event, fail to state a claim. (*See generally* Defs.' Mem.) The Court will address these arguments separately.

1. Statute of Limitations

Defendants argue that Plaintiff's claims are time-barred. (Defs.' Mem. 3–7.)[6] The Court previously held that Plaintiff's claims for unlawful search based on the allegedly forged warrants were time-barred by the three-year statute of limitations, because Plaintiff "filed his initial Complaint on November 21, 2016," but his claims accrued "on the date of the search itself—March 29, 2013." (Opinion 13.) The only new fact that Plaintiff alleges with respect to the statute of limitations is that he did not "become aware of the existence of any search warrant until October 26, 2016," when his attorney in an unrelated criminal matter gave him the documents after they were turned over in discovery. (Pl.'s Mem. 3; SAC 8.)

The Supreme Court has held that the statute of limitations for federal claims under 42 U.S.C. § 1983 "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citations omitted). Accordingly, federal courts in New York apply a three-year statute of limitations for personal injury actions to § 1983 claims. *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (holding so for § 1983 claims).

Setting aside the fact that Plaintiff has previously asserted that he became aware of "this exonerating evidence" on June 20, 2014, (*see* Pl.'s Orig. Mem. 3–4), as discussed in the Court's prior Opinion, judicially noticeable documents make Plaintiff's allegation that he was unaware of the existence of any search warrant prior to October 2016 implausible. Specifically, the Court noted that Plaintiff's counsel filed a "suppression motion in connection with his criminal case challenging the validity of the search of his home, which resulted in an opinion in which the state

---

[6] Plaintiff concedes that all state law claims are time-barred and that they also must be dismissed for failure to comply with New York General Municipal Law § 50-e(1). (Pl.'s Mem. 5.) Plaintiff also concedes that his conspiracy claims must be dismissed for failure to state a claim, and that he has failed to state a claim for false arrest. (*Id.*)

11

court judge discussed the probable cause for the warrant." (Opinion 16.) The Court went on to say that Plaintiff therefore knew or should have known about the basis for the warrant by August 20, 2013 at the latest, when Judge Freehill denied his suppression motion. (*Id.*)

In any event, Plaintiff's allegation does not change the fact that, under New York law, his claim accrued at the time of the search, rather than at the time he first obtained copies of the warrants, and therefore his claims based on a forged search warrant are time-barred. (*See* Opinion 13–14.) *See Forbes v. City of New York*, No. 15-CV-3458, 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016) ("An unlawful search claim accrues at the time of the search." (citation and quotation marks omitted)); *DeRaffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *10 (S.D.N.Y. Mar. 30, 2016) (holding that the plaintiff's Fourth Amendment claim accrued on "the date on which the allegedly illegal search and entry occurred" and collecting cases); *see also Williams v. Savory*, 87 F. Supp. 3d 437, 453 (S.D.N.Y. 2015) (rejecting as "incorrect" the plaintiff's argument that her § 1983 claim accrued on the date when she "came to know that her Constitutional protections were compromised" by an earlier warrantless seizure because her claim accrued when she knew of the *harm* (citations omitted)).

Plaintiff does not expressly renew his argument that the Court should apply the doctrine of equitable tolling. In any case, the only allegation in the Second Amended Complaint that could arguably warrant equitable tolling, that Plaintiff's counsel deliberately concealed the existence of the warrants from him and he was therefore unaware of them until October of 2016, directly contradicts Plaintiff's prior allegations and assertions that he became aware of the allegedly forged warrants on June 20, 2014, "when ADA Rosenwasser all but dismissed the Indictment in favor of the [P]laintiff when he himself had discovered that [P]laintiff had become aware of this particular injustice." (Pl.'s Orig. Mem. 4; *see also* FAC 5 (alleging that during a

sidebar with Judge Freehill on June 20, 2014, "it was discovered that the Search Warrant used in this case by the above-named [D]efendants was not authorized to search the 'Residence' of . . . [P]laintiff.").) In cases "where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading." *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014) (citations omitted); *see also Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."); *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011) (noting that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in his original complaint" (citation, alteration, and quotation marks omitted)), *aff'd*, 457 F. App'x 40 (2d Cir. 2012); *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (dismissing pro se amended complaint based on facts "set forth in his original complaint" where "[t]he plaintiff blatantly change[d] his statement of the facts in order to respond to the defendants' motion to dismiss"). The Court is therefore not obligated to credit Plaintiff's new and contradictory allegation that he was unaware of the existence of the search warrants until October 2016.

Furthermore, Plaintiff's argument that he is entitled to equitable tolling because Defendants "fraudulently concealed the forged search warrant" was rejected in the Court's Opinion, on the basis that "this is not a case in which Plaintiff can 'show that it would have been *impossible* for a reasonably prudent person to learn about his . . . cause of action' prior to the statutory period commencing." (Opinion 15 (quoting *Pearl v. City of Long Beach*, 296 F.3d 76,

13

85 (2d Cir. 2002)).) The Court reasoned that because Plaintiff was counseled in his criminal trial, his counsel filed a suppression motion challenging the search warrant that authorized the search of Plaintiff's home on August 5, 2013, and Judge Freehill issued an opinion denying that motion on August 20, 2013, it was not plausible that Plaintiff could not have discovered his cause of action by at least August 20, 2013. (*Id.* at 16.) *See Thompson v. Rovella,* No. 15-CV-1742, 2017 WL 601399, at *6 (D. Conn. Feb. 14, 2017) (holding that equitable tolling did not apply where the plaintiff claimed that evidence was wrongfully withheld from him during criminal proceedings because the statute of limitations began to run after that, and because the "[p]laintiff, by and through counsel," filed another claim indicating knowledge of the facts comprising his current federal complaint), *reconsideration denied*, 2017 WL 3269077 (D. Conn. Aug. 1, 2017), *aff'd*, 2018 WL 2427585 (2d Cir. May 30, 2018); *Noguera v. Hasty*, No. 99-CV-8786, 2000 WL 1011563, at *13 n.24 (S.D.N.Y. July 21, 2000) (finding that the plaintiff was not "entitled to equitable tolling" because she "was represented by counsel in her criminal case," whom she informed of the basis of her eventual civil complaint), *adopted in part by* 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001); *cf. Gemmill v. Westchester Jewish Ctr.*, No. 11-CV-4821, 2012 WL 1871590, at *3 (S.D.N.Y. Apr. 30, 2012) ("The law in the Second Circuit is clear that if an individual is represented by counsel at any time during the period in which the statute of limitations runs, there can be no equitable tolling." (citation omitted)).

The Court also expressly held that "even if Defendants concealed the fact that the second Warrant was definitively forged . . . this alone is insufficient to warrant equitable tolling when Plaintiff had access to at least the initial warrant and first-hand knowledge of the events of the search and his arrest," because "in light of the documents filed in state court, Plaintiff either knew only about the first warrant within the statute of limitations . . . [and] could have filed a

14

lawsuit on th[at] basis . . . , or he had access to both warrants, and was able to file a lawsuit arguing that the second one was forged." (Opinion 16–17 (citing, inter alia, *Khalil v. Pratt Inst.*, No. 16-CV-6731, 2018 WL 705306, at *2 (E.D.N.Y. Feb. 2, 2018) ("[A]llegations that [the] defendant withheld documents from [the] plaintiff, without more, would be insufficient to establish that such tolling applies here. [The] [p]laintiff must also allege facts demonstrating that [the] defendant's withholding of those documents deprived him of information needed to file a lawsuit." (citation, alterations, and quotation marks omitted))).) Plaintiff's newly-added allegation specifying precisely when he received copies of both Warrants does not alter this finding, which was based not on allegations in the First Amended Complaint, but on the judicially-noticeable documents filed in Plaintiff's criminal action. (*See* Suppression Motion; Suppression Decision.)[7]

---

[7] The Court notes that Plaintiff has nowhere explained the basis for his allegation that the second Warrant was forged. Plaintiff attaches two Warrants issued by the same judge on the same day, one approximately 45 minutes after the other. One Warrant authorizes search of Plaintiff's vehicle, and the second authorizes search of his residence. It is perfectly legal to issue two separate warrants pursuant to the same investigation authorizing searches of different areas. *See, e.g.*, *United States v. Fifty-Five Boxes of Tide Downy Powder Detergent*, No. 15-CV-2678, 2015 WL 9581876, at *1–2 (E.D.N.Y. Dec. 30, 2015) (ruling on civil forfeiture action based on property seized pursuant to three search warrants, two of which were issued on the same day); *United States v. Jacobson*, 4 F. Supp. 3d 515, 518 (E.D.N.Y. 2014) (deciding motion to suppress evidence including two separate search warrants issued in the same criminal investigation). Plaintiff's conclusion that the second warrant authorizing search of his residence must be forged merely because an earlier warrant to search his vehicle was also issued is entirely speculative and therefore insufficient to state a claim, even if that claim were not time-barred. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *see also Vangerve v. Pennsylvania*, No. 10-CV-2581, 2011 WL 2326970, at *6 (E.D. Pa. June 14, 2011) (noting that "only bare conclusory allegations regarding [a] 'forged' warrant" are insufficient to state a claim because a district court "need not accept such clearly baseless facts or fanciful allegations" (quoting *Wells v. King*, 232 F. App'x 148, 149–50 (3d Cir. 2007))); *cf. In re Scott*, 572 B.R. 492, 527 n.52 (Bankr. S.D.N.Y. 2017) (according "no weight" to a debtor's "unsupported allegation" that a check was forged, because "[t]he statement is entirely speculative"). Moreover, Plaintiff's allegations of a conspiracy to violate his due process rights, including to conceal the Search Warrant from Plaintiff, "are wholly conclusory and implausible,"

15

The Court therefore declines to alter its prior ruling that Plaintiff's claims based on an allegedly forged warrant are time-barred, and Defendants' Motion To Dismiss is granted.[8]

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Because this is the second adjudication of Plaintiff's claims on the merits, the dismissal is with prejudice. *See Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (stating that even pro se plaintiffs are not entitled to file an amended complaint if the complaint "contains substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).[9]

---

and therefore "the Court also rejects Plaintiff's equitable tolling argument" on this basis. *Sales v. N.Y.C. Transit Auth.*, No. 08-CV-3420, 2010 WL 87758, at *5 n.3 (S.D.N.Y. Jan. 7, 2010).

[8] Because Plaintiff's only remaining federal claim against Defendants is time-barred, the Court need not address Plaintiff's argument that he has sufficiently pled a *Monell* claim.

[9] Plaintiff names Rosenwasser and Greenwald as Defendants in this Action, but neither has been served. In any event, as an assistant district attorney, Rosenwasser has prosecutorial immunity for the actions alleged in the Second Amended Complaint. *See Parker v. Zugibe*, No. 16-CV-4265, 2017 WL 4296795, at *3 (S.D.N.Y. Sept. 26, 2017) (explaining that prosecutors have absolute immunity for all "prosecutorial activities intimately associated with the judicial phase of the criminal process," including authorizing an allegedly illegal search (citation and quotations omitted)). Additionally, Plaintiff may not assert a Fourteenth Amendment Claim or Ineffective Assistance of Counsel claim against Greenwald pursuant to § 1983 because, even if appointed by the judge in Plaintiff's criminal case, Greenwald is not a state actor. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (citation omitted)); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (noting that the plaintiff's lawyers were "not state actors" and thus not liable in an action under § 1983 unless "conspiring with a state official . . . acting under color of state law" (citation, alterations, and quotation marks omitted)). Finally, because all of Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over any state law claims that Plaintiff intended to assert against Greenwald for legal malpractice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well" (citation omitted)). Should Plaintiff wish to assert such claims against Greenwald, he may bring them in state court.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 67), mail a copy of this Opinion to Plaintiff, and close this case.

SO ORDERED.

Dated: July 9, 2019
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE